PRESIDENT HOTEL OF LONG BEACH, INC., Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28249.)

PAULINE GOLDMAN et al., Doing Business as PRESIDENT HOTEL, Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28251.)

Court of Claims, September 30, 1949.

*Leo E. Sherman* for claimants.

*Nathaniel L. Goldstein, Attorney-General* (*Abe Wagman, David Marcus* and *Arthur I. Seld* of counsel), for defendant.

RYAN, J. Pursuant to article IX-A of the Public Housing Law the State of New York on May 15, 1946, appropriated the use and occupation of thirty-seven apartments in the President Hotel at Long Beach for a period of time ending April 30, 1947. At the time of the appropriation the hotel had been leased to the claimants Goldman and Schiffman for the summer season of 1946. Our first problem is to determine the fair rental value of the apartments taken by the State for the term stated in the notice of appropriation. The claimants demand that they are entitled to recover the rentals they would have received in a free and open market while the Attorney-General contends that the Office of Price Administration ceiling rates should control. It is undisputed that in a free market summer rentals at Long Beach are high and if no attention were paid to Office of Price Administration rates the proof before us would entitle claimants

to an award for the summer season of 1946, in the amount of $32,825. Winter rentals at Long Beach in a free market are admittedly at lower rates than summer yet the rates contended for by claimant in Claim No. 28251 would entitle it to an award for the winter season in the amount of $23,587.50 computed for the period from September 15, 1946, to May 31, 1947.

However, the fact is that before the State of New York came into the picture twenty-one of the thirty-seven apartments had been placed under Office of Price Administration control for the summer season, seventeen of them from May 28, 1945, and four of them from March 21, 1946. That left sixteen apartments which were not under Office of Price Administration control for summer occupancy at any time. We have come to the conclusion that in arriving at a fair award consideration must be given to Office of Price Administration controls. If the State of New York had not taken the apartments the claimants would have been confronted with Office of Price Administration regulations in any attempt they made to lease the controlled apartments to other tenants. President Hotel of Long Beach, Inc., filed a protest with the Office of Rent Control and ultimately its protest was granted and its building was exempted from the regulation for the summer season of June 1, 1947, to September 20, 1947. This order, effective April 14, 1947, was not, in our opinion, retroactive. We have decided that the claimants Goldman and Schiffman are entitled to an award for the summer season of 1946, in the amount of $19,100. This amount is arrived at by computing rents for the uncontrolled apartments in accordance with the testimony adduced from the claimants' witnesses and for the controlled apartments at the Office of Price Administration ceiling.

In respect to the winter season we make an award in the amount of $12,292.50. This is computed at the Office of Price Administration ceiling rent because it appears that in respect to winter occupancy all of the thirty-seven apartments were under Office of Price Administration control from October 19, 1945. The computation is made for the period from May 16, 1946, to May 31, 1946, and for the additional period from October 1, 1946, to April 30, 1947.

A further item in the demand of claimant President Hotel of Long Beach, Inc., is pleaded as follows: " By the appropriation of these apartments with expiration on April 30, 1947, the claimant has been precluded from renting the apartments for the summer season June 1, 1947 to September 15, 1947 with the same effect as if said appropriation carried with it an option for continued occupancy for the ensuing summer 1947 season.''

Under this clause of its pleading claimant asks for a recovery in the full amount of summer rentals, viz., $32,825 less a credit, which it admits, in the amount of $7,677, a sum collected from various occupants after April 30, 1947. The request for an award in this amount, viz., $25,148, is based on the theory that because the tenants who had been put into possession by the State of New York did not vacate on April 30, 1947, there was a holding over of possession by the State. However, claimant's suit was instituted by the filing of its claim on August 16, 1946, at which time no one could have known that possession would not be surrendered on the terminal date. The presumption would be to the contrary. As it happened, all that the State of New York did was to notify its tenants that the appropriation would terminate April 30, 1947, notify the claimant that it would not continue in possession beyond that date and, when the date arrived, tender the keys to the appropriated apartments to the claimant's superintendent. At that time the State's tenants occupied all of the thirty-seven appropriated apartments except four. Before July 1, 1947, claimant had leased these four apartments at the full summer rental and on July 7, 1947, it leased a fifth apartment which had then been vacated for only $50 less than the full summer rental. The receipts from these rentals and from four other apartments which the claimant relet in July and August are included in the sum for which the claimant is willing to give the State credit.

The claimant's conduct indicates that it regarded the State of New York as a trespasser rather than as a tenant holding over. Its pleading to the effect that it was " precluded from renting the apartments for the summer season " confirms this. In its proposed finding claimant offers the credit of $7,677 " in mitigation of damages." The proofs that claimant did all it could do to mitigate are not satisfactory. There is no showing of any attempt to evict occupants of the apartments. There is no proof that the nine which were leased were the only ones which became vacant and available to claimant before the summer season came to an end. Yet, unquestionably the terminal date of the appropriation made it difficult and inconvenient for either a landlord or a prospective tenant to negotiate for a summer season. And the State's representatives must have been aware that, with the acute housing shortage which existed, its tenants would not readily depart when the term of the appropriation ended. We do not doubt that the claimant was interfered with to its injury. We believe that the pleading quoted should be construed as an allegation of consequential damages,

arising out of and following upon the appropriation. We find in the record before us sufficient evidence to assess damages on this basis. On this item we award claimant President Hotel of Long Beach, Inc., the sum of $7,500 together with interest thereon from September 30, 1947.

There are two more allegations of damages pleaded in claimant's claim. The first of these charges that the State through its agents, after the notice of appropriation was filed, entered into possession of the apartments in a manner which was unlawful, unwarranted and which constituted trespass. The second charges that the State's agents invited representatives of the press and photographers to take pictures to be published in a New York daily and in other newspapers of the manner of the entry and that this constituted a libel on the claimants. In respect to these allegations the claimants have failed to prove facts sufficient to constitute a cause or causes of action and these items of the claim are dismissed.

Decision accordingly.